## R. T. DANIELS JR., v. STATE.

No. A-9431.   Jan. 11, 1940.
(98 P. 2d 68.)

George H. Jennings, of Sapulpa, and J. P. Evers, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Everett S. Collins, Co. Atty., of Sapulpa, for the State.

BAREFOOT, J.   The defendant, R. T. Daniels, Jr., was charged by information in Creek county, with the crime of operating a motor vehicle while under the influence of intoxicating liquor; was tried, convicted and sentenced to pay a fine of $2,000, and serve one year in the penitentiary, and has appealed.

At the time of the trial counsel for defendant orally moved the court to set aside and quash the information, and dismiss the case for the reason "that the information in this case was not filed within two terms after the preliminary hearing was had in this case." It is now contended that the court erred in overruling this motion.

The record does not bear out the statements contained in the motion. It reveals that under the statute Creek county has two terms of court each year. One beginning March 1st, and one beginning September 1st. The court takes judicial knowledge of these terms. The preliminary examination of defendant was had on November 1, 1933, and the justice of the peace filed his transcript in the district court on November 6, 1933. This was during the time of the criminal session of the September, 1933, term of the district court. It was impossible to set the case for that term. The next term of the district court commenced on March 1, 1934, and while the record does not specifically show, it may be presumed therefrom that no term of the criminal court was held prior to August 23, 1934, the date the information was filed in the district court in this case. The county attorney announced in open court that it was his practice not to file an information

until just prior to the time the case was to be set for trial. While this practice is not to be commended, we do not find that it is such error as to reverse and dismiss this case.

The information was filed during the next succeeding term after the preliminary examination was had, and the transcript filed in the district court. From the record we are of the opinion that defendant waived any right which he may have had by a delay in filing the information. The record discloses that September 11, 1934, a demurrer to the information was filed. It was overruled on the same date. On September 19, 1934, the case was continued for the term on motion of defendant. On March 4, 1935, the case was stricken from the docket for lack of court funds. On March 18, 1936, it was set by agreement of the state and defendant for March 25, 1936. On this date the defendant was not present and his appearance bond was forfeited. On April 1, 1936, a motion was filed to set aside the bond forfeiture. On May 1, 1936, the court, after hearing said motion, set the bond forfeiture aside, and continued the case for the term. On May 13, 1937, the case was set for trial on June 1, 1937. On May 17, 1937, the defendant filed a demurrer to the information and the same was overruled on the same date. On June 2, 1937, a motion for continuance was filed by defendant on account of illness. The record does not disclose that this motion was passed upon, but the case went to trial on the 3d day of June, 1937. The defendant was present and testified in his own behalf.

Under the above statement of the record, we are of the opinion that the defendant, by his own conduct, waived any right he may have had to a more prompt and speedy trial, as guaranteed under the Constitution and laws of this state.

The facts in the case of Petitti v. State, 11 Okla. Cr. 234, 145 P. 305, relied upon by defendant for a reversal of this case, are different from the facts here presented. In that case the court stated that two terms of the district court had passed before the magistrate filed his transcript in the office of the court clerk, and that three terms of court had passed without an information being filed against the defendant. The facts in the instant case show that an information was filed during the term immediately following the filing of the transcript, and that the transscript was filed five days after the preliminary was held. The same statement applies to the cases of Day v. State, 50 Okla. Cr. 180, 296 P. 987, and McLeod v. Graham, 6 Okla. Cr. 197, 118 P. 160.

In support of the position above taken, see: Murray v. State, 19 Okla. Cr. 322, 198 P. 973; Hollingsworth v. State, 50 Okla. Cr. 164, 297 P. 301; Stroud v. State, 57 Okla. Cr. 273, 47 P. 2d 883; Ex parte Menner, 35 Okla. Cr. 252, 250 P. 541.

It is next contended that the court erred in permitting the county attorney to indorse the name of Rex Alexander upon the information after the case was called for trial. We have examined the record and the evidence of this witness, and do not think the error complained of, if any, was sufficient to cause a reversal of this case. It has generally been held by this court that permission to place the name of a witness upon the information is in the sound discretion of the trial court. Unless this discretion has been abused, there should be no interference on the part of the appellate court. Thomas v. State, 20 Okla. Cr. 151, 201 P. 662.

The contention that the court erred in permitting the introduction of incompetent and improper evidence will be considered under other assignments of error.

It is contended that the court erred in giving instruction No. 5, which is as follows:

"Gentlemen, you are instructed that the laws of this state provide: 'It shall be unlawful for any person who is under the influence of intoxicating liquor, or who is an habitual user of narcotic drugs, to operate or drive a motor vehicle on any highway within this state, and any person violating the provisions of this section shall be deemed guilty of a felony and shall be punished by imprisonment in the penitentiary not more than one year, or by a fine of not more than two thousand dollars ($2,000.00), or by both such fine and imprisonment.' "

The contention being that section 10324, Okla. Stats. 1931, 47 Okla. St. Ann. § 93, which creates and defines the offense of operating an automobile while under the influence of intoxicating liquor, also makes it unlawful for one who is an habitual user of narcotic drugs to operate and drive a motor vehicle upon the highways of this state. That the two crimes are separate and distinct, and that by reason of instruction No. 5, mentioning the term "or who is an habitual user of narcotic drugs", that defendant was charged and made to answer for a separate and distinct offense. We do not think such a construction should be placed upon this instruction. It was merely quoting, as stated by the court, the exact terms of the statute. There was no evidence that defendant was under the influence, or a habitual user of narcotic drugs. The jury evidently did not in any way consider this fact in arriving at their verdict. This instruction should be read in connection with instructions Nos. 6, 7, and 8. In all of these instructions only that part with reference to being "under the influence of intoxicating liquor" is referred to, and in no way were the jury instructed to consider the fact that defendant "was an habitual user of narcotic drugs." All of the instructions should be considered as a whole.

The court, in instruction No. 6, defined the term, "under the influence of intoxicating liquor," as follows:

"You are instructed that to be 'under the influence of intoxicating liquor', as these words are used in the statute under which this prosecution is brought, means that the accused must have been sufficiently under the influence of intoxicating liquor to materially affect his mental or physical ability to drive a car on the public highway, or to materially affect his judgment in meeting the ordinary exigencies incident to driving a car on the public highway."

It is contended that this instruction is erroneous in view of a recent opinion of this court in the case of Luellen v. State, 64 Okla. Cr. 382, 81 P. 2d 323. In the Luellen Case it was held that when a defendant was charged under the statute above quoted, it was best for the court to define the term "under the influence of intoxicating liquor," so that the jury would be able to determine from the facts whether the defendant was under the influence of intoxicating liquor, and there would not be a chance of mistrials by reason of different interpretations attempted to be placed upon the term by different jurors. After an examination of many definitions, we gave one which we deemed a good one. Not that it was the only definition, because many courts had defined the terms in other words, which might be just as appropriate as the one suggested. The definition given in instruction No. 6 defined the term so that the jury could have some knowledge of what the term meant. In general terms it was the same as the definition suggested in the Luellen Case. We find no error in the giving of the same.

It is next contended that the court erred in refusing to give three instructions requested by defendant. The first requested instruction was to the effect that under the law of this state 3.2 per cent. beer was not intoxicating, and that unless the jury found that defendant was

operating a motor vehicle while under the influence of intoxicating liquor containing in excess of 3.2 per cent. of alcohol, that defendant should be acquitted. In the recent case of Ashcraft v. State, 68 Okla. Cr. 308, 98 P. 2d 60, we have held against this contention, holding that the statute defining intoxicating liquor had specific reference to taxing and licensing of beverages and had no application to the statute under which defendant was charged and tried. The other two requested instructions singled out certain evidence that was introduced, and while the statements made were correct propositions of law, they were covered by the general instructions, and the court did not commit error in refusing to give them.

The contention that the trial court did not require the court reporter to take the full speech of the county attorney and special prosecutor, and that the argument made by them as prejudicial will be considered in connection with other assignments of error.

It is finally contended that the verdict and punishment is excessive, and was given under the influence of passion and prejudice.

The defendant in this case was given the extreme penalty under the law, a fine of $2,000 and one year in the penitentiary. The charge in this case was the result of a collision of the automobile of defendant and one driven by Omer Gearin, who had with him his wife and two minor children. Basil Smith was in the car of defendant at the time of the collision, which occurred about two miles west of Sapulpa, in Creek county, on U. S. Highway No. 66. Neither Mr. Gearin nor his wife and children were injured. His car was damaged. The defendant's car turned over two or three times, and he was injured about the head.

The evidence of the witnesses for the state was to the effect that defendant was under the influence of intoxicating liquor at the time of the collision, and that he was driving on the wrong side of the road. Mr. Gearin and his wife testified that two of the wheels of his own car were off the pavement in his attempt to keep the defendant's car from striking him. Officers and others testified that defendant was drunk immediately after the collision.

The defendant and Basil Smith testified that defendant was not drunk. That they had been in Oklahoma City on business and were returning to their home in Tulsa. That they stopped at Bristow and defendant had drunk a bottle of beer, and that was the only liquor he had drunk during the day. The jury was amply justified in finding from the evidence that the defendant was not only under the influence of intoxicating liquor at the time of the collision, but that he was drunk and staggering. There is no question as to the right of the jury to return a verdict of guilty. The question is, Is it excessive, and was it rendered under passion and prejudice?

The defendant was a young man, a resident of Tulsa. He was arrested by officers of Creek county and taken to the police station in Sapulpa. At the time of his arrest, according to the testimony of different officers, he made the following statement: "I am Dick Daniels, Jr.; I live in Tulsa; my dad owns the Daniels Building over there; you can't do this to me; I want to use the telephone; he wanted to call over there and just weaved around continually."

Another state witness testified: "Well he made one when he was going to the cell to lay down, he said, 'My name is R. T. Daniels, Jr., and my dad owns the Daniels Building in Tulsa, and I can buy this God-damned police department if I want to.'" Also, "He made the statement

that he had some men working on drilling wells in Creek county, and he would see that they didn't spend no more money in Creek county."

These statements are the statements of a misguided youth. Foolish in the extreme, and unjustifiable and inexcusable in every way. Yet he was expressing the views of many young boys of today who have good fathers and mothers, and who have earned their money by the sweat of their brows. They think that by reason of the standing and influence of these good fathers, they are immune from arrest; that they have the right of the road, and that they ought to be permitted by reason of that fact to have others stand aside and permit them to pass.

There is nothing wrong with the verdict in this case. The wrong, if any, is with the penalty prescribed by section 10324, Okla. Stats., 1931, 47 Okla. St. Ann. § 93. And while it is true that the Legislature has the right to pass any law that they see fit, laws are sometimes enacted which the people refuse to enforce. The statute under consideration provides for a maximum penalty of one year in the penitentiary and a fine of $2,000. There can be no doubt that the jury returned this verdict under passion and prejudice by reason of the testimony of the officers as to statements made by defendant at the time of his arrest as above stated. There is not much question that had the statute under question given the jury the right to assess a jail sentence, they would have given this defendant a jail sentence instead of a penitentiary sentence. While his statements were without justification, there is nothing in the record to show that he has ever committed any crime, and he bears a good reputation as far as not being a criminal. He deserves punishment, and if the statute permitted, we would not hesitate sending him to jail, but we do not think that the ends of justice would be

met by sending him to the penitentiary and making of him a felon, under the facts in this case. No one was injured but himself. We are of the opinion that this judgment and sentence should be modified from one year in the penitentiary, and a fine of $2,000, to a fine of $1,000 and costs. The ordinary layman who serves on the jury does not often realize the punishment inflicted by the levying of a fine. Under the law, if this defendant could not pay the fine which we have assessed of $1,000 and costs, it would be necessary for him to remain in jail over three years to satisfy its terms under the law. Oklahoma Statutes 1931, section 3169, 57 Okla. St. Ann. § 20.

For the reasons above stated, the judgment and sentence of the district court of Creek county is modified from one year in the penitentiary, and a fine of $2,000, to a fine of $1,000 and costs; and as so modified is affirmed.

DOYLE, P. J., concurs.