JACK DREW v. STATE.

No. A-9784.    April 9, 1941.

(112 P. 2d 429.)

416

Ogden & Thompson, of Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J.    The defendant, Jack Drew, was by information charged, on May 4, 1939, in the district court of Carter county, with the offense of driving an automobile while under the influence of intoxicating liquor; was tried, convicted, and sentenced to pay a fine of $50, from which judgment and sentence he appeals to this court.

For a reversal of this case, the defendant makes two assignments of error:

(1) That the trial court erred in failing to give certain requested instructions to the jury.

(2) That the trial court erred in refusing to permit defendant to introduce certain evidence.

The defendant was arrested while driving a Buick coupe, with a house trailer attached, on Highway No. 77 in Carter county.

The state introduced the testimony of Highway Patrolmen Adams and Hall that they observed defendant weaving from one side of the road to another, and that they had a great deal of trouble forcing him to stop.    That he stopped his car in the middle of the road and was slumped over the wheel in a drunken condition.    They smelled alcohol on his breath; he was flushed; his eyes blood-shot; and he was talkative, but incoherent in conversation.

Deputy Sheriffs Bartlett and Cunningham, who saw defendant when he was brought to the county jail, testified that he was drunk.

The defendant testified that he was not under the influence of intoxicating liquor.    He stated that on account of the length of his car and trailer he had to swing over

to the wrong side of the road to ascertain whether or not he had room to pass another car. Defendant stated that he had spent approximately two hours at the Green Hoop, a road side tavern north of Ardmore, and that he had drunk four or five bottles of Falstaff beer.

Defendant offered the testimony of two witnesses who served him beer at the Green Hoop that he was all right when he came in the place and all right when he left. He then tendered proof, which was refused, to show that beer similar to that which he drank contained less than 3.2 per cent. alcohol.

The defendant presented three requested instructions in writing, all of which were in substantially the same language and in effect had the same meaning. These requested instructions were to the effect that if the jury found that the defendant was under the influence of beer which did not contain more than 3.2 per cent. of alcohol by weight, he would not be guilty of the offense of driving an automobile while under the influence of intoxicating liquor, for the reason that under the laws of the State of Oklahoma beverages containing no more than 3.2 per cent. of alcohol by weight are declared to be non-intoxicating. The court was correct in refusing to give these instructions. Since the trial of this case, the Criminal Court of Appeals has passed upon this same question in five different cases, to wit: Odom v. State, 68 Okla. Cr. 117, 95 P. 2d 916; Curtis v. State, 69 Okla. Cr. 278, 101 P. 2d 1062; Foglesong v. State, 69 Okla. Cr. 360, 103 P. 2d 106; Ashcraft v. State, 68 Okla. Cr. 308, 98 P. 2d 60; Daniels v. State, 68 Okla. Cr. 324, 98 P. 2d 68.

In these cases it was held that section 1, ch. 153, Session Laws of 1933, 37 Okla. St. Ann. § 151, defines what are "intoxicating" and "nonintoxicating" liquors. The definition under this act was for the purpose of thus classi-

fying beverages, as a foundation for the subsequent licensing and taxing provision. It was not intended to regulate the provisions of the law with reference to the enforcement of the criminal statutes.

These cases further held that section 10324, O. S. 1931, 47 Okla. St. Ann. § 93, makes it an offense for one who is under the influence of intoxicating liquor, or who is a habitual user of narcotic drugs, to operate or drive a motor vehicle on any highway within this state. Under this statute it was the intention of the Legislature to punish those who were in fact "under the influence of intoxicating liquor," whether it be caused from drinking beer with an alcoholic content of less than 3.2 per cent. or liquor in excess thereof.

After these requested instructions in writing were presented to the court and the instructions delivered to the jury, the defendant, through his counsel, verbally requested the court to define the term "intoxicating liquor." A considerable portion of the brief of the defendant is devoted to the contention that the court erred in refusing this request.

The instructions given by the court are not numbered, but on page 95 of the record appears the following instruction:

"In this connection you are told that if intoxicating liquor has so far affected the nervous system, brain or muscles of the driver of an automobile as to impair, to any appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is 'under the influence of intoxicating liquor' within the meaning of the statute."

This instruction is in the identical language of the instruction which this court approved in the case of Luellen v. State, 64 Okla. Cr. 382, 81 P. 2d 323. Apparently

counsel for the defendant thought the above instruction did not go far enough, as the record shows the following after the instructions were given:

"By Mr. Ogden, of Counsel for Defendant: (Out of hearing of the jury.) Comes now the defendant and most respectfully requests the Court to define to the jury the term 'intoxicating liquor.' By the Court: The request is denied. By Mr. Ogden, of Counsel for Defendant: Exception."

In Merriott v. State, 18 Okla. Cr. 247, 194 P. 263, 266, it is stated:

"Where counsel for a defendant believe that the instructions of the court should more definitely or fully state any proposition embraced in the charge, it is the duty of counsel to prepare and present to the court a correct and complete instruction, and request that it be given, and in the absence of such request this court will not consider an objection that * * * the court failed to instruct upon any given proposition, where the instructions, considered as a whole, embody the law applicable to the case."

See, also, Pulliam v. State, 61 Okla. Cr. 18, 65 P. 2d 426; Carpenter v. State, 56 Okla. Cr. 76, 33 P. 2d 637; Fitzsimmons v. State, 14 Okla. Cr. 80, 166 P. 453.

It was not necessary for the court to define the term "intoxicating liquor," but we have held that it is proper for the trial court to define the term "under the influence of intoxicating liquor," which the record shows was done in this case.

The trial court was under no duty to define the term "intoxicating liquor" for the jury, since the term is self-definitive and there is no arbitrary distinction between what constitutes "intoxicating liquor" and "nonintoxicating liquor" under this statute (sec. 10324, supra). The point was settled definitely in Ashcraft v. State, supra, when the court stated:

"In using the expression 'under the influence of intoxicating liquor' [sec. 10324, O. S. 1931, 47 Okla. St. Ann. § 93], the Legislature undoubtedly used the term in the same sense as it had been used in the Constitution, and had reference to all liquor which is intoxicating in fact. \* \* \* It was the intention to punish those who were in fact 'under the influence of intoxicating liquor', whether it be caused from drinking beer with an alcoholic content of 3.2 per cent, or liquor in excess thereof."

In Markinson v. State, 2 Okla. Cr. 323, 101 P. 353, it was held:

"The words 'intoxicating liquors,' as used in the prohibition ordinance of the Constitution, reasonably construed, mean liquors which will intoxicate, and which are commonly used as beverages for such purpose. \* \* \*

The defendant next contends that the court erred in rejecting evidence offered by the defendant that the next day after the arrest of the defendant, he returned to the Green Hoop Tavern, where he had drunk the Falstaff beer, and bought two bottles of the same kind, character, out of the same box, and which contained identically the same percentage of alcohol, if any, as was contained in the beer which was drunk by the defendant the day before; that this beer was analyzed by the State Chemist, and that the State Chemist was present and ready to testify as to the results of the chemical analysis. That the analysis showed said beer contained less than 3.2 per cent. alcohol by weight. Five witnesses were placed on the witness stand to lay the predicate for the introduction of this evidence. Objection to the testimony of each witness was sustained.

It is true that the fact that the defendant had drunk only 3.2 per cent. beer is not a defense to this charge. If the liquid consumed by the defendant had contained only 1 per cent. of alcohol, it would be immaterial if such liquid would in fact produce intoxication of the person who

drank it. It was a question of fact for the determination of the jury as to the state of intoxication of the defendant, if in fact he was at all intoxicated.

The trial court, in refusing this evidence, evidently was proceeding on the theory that the defendant was contending that since the proof would show that he had only drunk a beverage which was legalized for sale, the same was a defense. As shown above, the defendant was proceeding on this theory; but at the same time he was entitled to show to the jury just what liquid he had consumed, and whether it contained any alcohol, and, if so, the exact amount of alcohol it had contained.

The fact of intoxication is proved or disproved in the same manner as any other disputed fact; and the rules of evidence are much the same as in other judicial inquiries. Hence, evidence of all facts and circumstances directly tending to establish or negative the intoxication of the accused is admissible. 42 A. L. R. 1506.

If the prosecution had evidence to show that the accused had consumed a liquid, although called beer, but which in reality had contained 20 per cent. of alcohol, the court certainly would have admitted this evidence for whatever weight the jury might have seen fit to give it in order to determine the degree of intoxication of the accused. Likewise, the defendant is entitled to show the nature and kind of liquid he drank.

The jury may have come to the conclusion from the testimony of the officers that the defendant was under the influence of intoxicating liquor by virtue of the manner in which his car was being driven. The defendant's evidence was to the effect that there was an exceptionally strong wind blowing on that day, which caused his trailer to swerve; and if the jury had been permitted to hear the testimony of the chemist, that the particular beer which

defendant drank was less than 3.2 per cent. alcohol, it would have strengthened the testimony of the defendant and his witnesses, who testified defendant was sober.

It would have been difficult for the defendant, if allowed to proceed with his evidence, to have sustained the offer of proof which was made. In order to make the chemical analysis competent as proof, evidence would first have to be made to establish that the beer which was analyzed was identical in every way, including alcoholic content, with that which was drunk. The defendant, through his counsel, so worded his profert of proof as to come within this rule and to make it competent. Counsel for defendant in making this offer stated that the proof would show that the beer which was drunk and that which was analyzed was the same kind, character, and contained the same percentage of alcohol. An objection by the state to this offer was sustained by the trial court.

The state contends that, if the rejection of this evidence is error at all, it only could be harmless error, as by the defendant's own admission he had drunk five bottles of Falstaff beer which contained at least some percentage of alcohol, and that the evidence of the state was so conclusive that the jury could have arrived at no other verdict than that of the guilt of the defendant.

Here we have a man, who the record shows is a first lieutenant in the Officers Reserve Corps of the United States Army and subject to be ordered to active duty at any time. If this conviction, which is a felony under the statute upon which the prosecution was based, should be permitted to stand, it would disqualify the defendant from serving in the armed forces of our country. This is not a defense to the crime, but since the conviction was sustained in this case, the Eighteenth Oklahoma Legislature has amended the statute under which this charge was filed by passage

424

of House Bill No. 37 to provide that the commission of the first offense of driving while intoxicated shall be a misdemeanor. The Legislature has thus declared the policy of the state towards first offenders of driving while intoxicated, and all offenses committed subsequently to the effective date of that act will be prosecuted under the misdemeanor statute, under which defendant does not forfeit any of the rights of citizenship in case of a conviction.

As stated above, these are not matters of defense to the alleged commission of a crime; but in a case where the question as to whether error of the court is harmless or an error which affects the substantial rights of the defendant, they are certainly entitled to consideration.

It is our opinion that the court erred in rejecting the testimony offered by the defendant above set forth. It had the effect of refusing the defendant the right to offer his defense.

The judgment of the district court of Carter county is reversed, and the defendant remanded for further proceedings consistent with this opinion.

BAREFOOT, P. J., and DOYLE, J., concur.