# MONZELL BUTLER v. STATE.

No. A-10873.    Sept. 23, 1948.

(198 P. 2d 221.)

Joe Ralls, of Atoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J.  This is a case of first impression.  Monzell Butler, the defendant below, was charged, tried by

a jury, convicted in the district court of Atoka county, and sentenced to a year and a half in the State Penitentiary for the crime of fraudulent branding of cattle in violation of the provisions of Title 4 O. S. A. § 268, the material part of which reads as follows, to wit:

"Any person who shall with intent to defraud, brand or misbrand, mark or mismark, any neat cattle, horse, sheep, goat, ass or mule not his own; or shall intentionally brand over a previous brand or shall cut out or obliterate a previous mark or brand, on any neat cattle, horse, sheep, goat, ass or mule, shall be punished by imprisonment in the penitentiary not exceeding ten years, or by imprisonment in the county jail not exceeding one year, or by fine not exceeding five hundred dollars."

The charging part of the information is in words and figures as follows, to-wit:

"Comes now W. H. Parker * * * Acting County Attorney, in and for Atoka County, * * * and gives the District Court of Atoka County * * *, to know and be informed that one Monzell Butler * * * did * * *, on or about the first day of March * * * 1946 * * *, commit the crime of Fraudulent Branding in the manner and form as follows:

"That is to say, the defendant did in said county and State, * * *, commit the crime of fraudulent branding of a domestic animal; that is to say: that on the date aforesaid the said defendant, Monzell Butler, did * * * brand a certain red bald-faced horned cow, about three years old, with the brand of MB, which was defendant's brand and that said animal was then and there owned by and the property of one Kelly Spring and at the time of said fraudulent branding bore the mark of the said Kelly Spring, to-wit: crop in right ear and underslope in left ear, with the intent to defraud the said Kelly Spring and to deprive the said Kelly Spring, the true owner, of said property, contrary to the form of the

statutes in such cases made and provided, and against the peace and dignity of the State of Oklahoma."

The defendant did not question the sufficiency of the information.

The record discloses that the prosecuting witness Kelly Spring, on or about March 1, 1946, was the owner of a red bald face horned cow, about three years old. Together with his hired man Bill Burgess, he had raised this cow from a calf after its mother died. She had been calved about the latter part of 1942. In the fall of 1942 Kelly Spring went away to the army, and returned in the summer of 1944. While he was away he kept his cattle in a pasture in the custody and care of Bill Burgess. Kelly Spring's mark was recognized throughout the community, it was a crop in the right ear and underslope in the left ear. From his place down to the defendant, Monzell Butler's, place was a distance of some six miles or more, and was open range. Kelly Spring said that he saw this calf in February, 1943; when he was home on a furlough, and it had not been branded then. The next time he saw the calf was after she had become a cow and had had a calf, and after the defendant was arrested. There had been no change in the marking of the cow but she had been branded MB on her hip, the original mark on both of her ears was identically the same. Her calf, however, had been marked with a crop and slit in both ears and had likewise been branded MB on its hip. No one had been authorized to put the brand thereon, or to mark or brand either the cow or the calf.

Kelly Spring's hired man, Bill Burgess, testified that in 1942 he was looking after Spring's cattle, that together he and Kelly Spring had raised the calf since it was born, and had custody of it until the latter part of the summer of 1943 when it got out of the pasture

and strayed away. He said that the calf was marked with a crop in the right ear and an underslope in the left when it was about six months old. He said he never saw the calf again, until the defendant's preliminary examination; that during the time the calf had strayed it had grown up to be a cow and had had the calf hereinbefore mentioned. The testimony shows that Smith Butler, a brother of the defendant, was in contact with Kelly Spring and advised him he had the animal in a pasture and for Kelly Spring and Bill Burgess to come down and inspect it, but on riding out to the pasture they were informed that the animal had gotten out of the pasture.

Robert Reeves testified, in substance, that he lived about eight miles from Monzell Butler's place; that he picked the cow up on the range in January or December of 1944 and took her home and watered her for the purpose of finding out to whom she belonged; that he examined her ears and found a crop in the right ear and an underslope in the left ear, but at that time she had no brand on her. He was advised that the mark on her ears was that of Kelly Spring. Thereafter, the cow had a calf. Thereafter, he got word to Kelly Spring to come and look at the cow and calf, and Kelly Spring did not do so. Shortly thereafter, Clarence Butler, a brother of the defendant, came and claimed the cow and the calf as being that of Monzell Butler; that he asked Clarence Butler about the marks being Kelly Spring's and he said Clarence Butler told him the cow had a slit in the right ear and that they went and examined her and on closer examination he found she did have a slit in the right ear, and then he asked Clarence Butler what he should do and he said to keep her lotted and "when you turn out your cattle, turn her out, too". He testified at the

preliminary hearing he examined the cow and he found that her left ear was practically gone, and she and the calf had both been branded.

John Nichols testified for the state, in substance, he had been working with cattle practically all of his life; that at the preliminary hearing he inspected the cow and the calf; that the cow was marked with a crop to the right and an underslope to the left; that she was branded MB on the left hip. He said the calf was marked with a crop and split in each ear. He further testified, the first time he saw this cow was down by the Butler sawmill in the fall of 1945; that at that time she was not branded but the calf was marked and branded; that the calf had a crop and slit in each ear and a B on its hip; that about three weeks later he saw the cow and calf again; that there had been no change in the mark; that he did not see her again until at the courthouse and the cow had been branded MB and the M had been put over the B on the calf. In other words, the M had been added to the B. He said that the M was put on the calf between the first and last time he saw it.

Oad Nichols, as a witness for the state, testified the first time he saw the cow and calf was in 1945 at Butler's mill; that he and his brother inspected the cow and calf for identification marks and brand, that the cow was marked with an underslope to the left and crop to the right, but was not branded; that the calf was marked with a little B on the left hip with a crop and slit in each ear. He further testified he inspected the cow and the calf at the time of the preliminary hearing, and that the cow had an underslope in the left ear and a crop in the right, and that the calf had a crop and slit in each ear and was branded MB. When he saw them at the preliminary hearing, both the cow and calf had been brand-

ed MB, and the calf had been branded with an M over the top of the B. He said the B of the brand was sitting at a kind of an angle as though it might have been branded as the calf went by.

John Simpson testified for the state, in substance, as follows: He said that he saw the cow when Reeves had her penned up, that at that time neither the cow nor the calf was branded, that later on in the fall he saw the calf with a B on it; that was in 1945, as well as a crop and slit in each ear, and the cow was branded MB on the left hip. At the preliminary he again saw the cow and calf, discovered the slit in the calf's ears and that was the first time he had ever seen it; that he was positive it was not there before when he had seen the cow and calf. That he had been associated with livestock for about 30 years for himself; that the first time he saw the cow and calf was out at Curtis Noel's; that from an inspection of them relative to brands and marks, the cow had a crop to the right and an underslope to the left with a slight slit. That, in substance, is the state's case.

Defendant, Monzell Butler, then testified in his own behalf, in substance, that he was the owner of both the cow and the calf; that he raised them from the time they were both calves; that he owned the mother of the cow; that he at no time hid the cow and calf from anybody. He admitted he had his own branding irons, and the cow and calf were branded with his brand. He positively denied that he branded the cow or calf but stated that his brother, Smith Butler, had done so in March, 1946. He gave as the reason for not branding them himself, that he had never used a branding iron and did not understand the art, that therefore he had his brother Smith do his branding. He said the cow and calf were both

branded at the same time with the MB on the left hip with the M over the B.

The defendant's brother, Smith Butler, admitted that he branded the cow and calf and he said he did so on the same day; that at the time they were branded the cow was over two years of age and the calf was quite small; that he branded them with an MB on the left hip with the M over the B and that both letters were put on at the same time. He said he did the branding with his brother's approval.

Other witnesses testified on behalf of the defendant to the effect that they viewed the cow and calf at the preliminary hearing and they were acquainted with the cow and knew it to be on the range with the defendant's cattle. They testified it belonged to the defendant. They gave as the reason they knew that the cow was that of Monzell Butler was that its left ear was cut nearly off and the other ear had a slit in it. They also testified that they had seen the cow when the ear was filled with worms and they told Clarence Butler about it and he cut the ear off to get rid of the worms, that they saw the same animal in the truck at Atoka, which was inspected at the preliminary hearing. Among these witnesses so testifying was Smith Butler, brother of Monzell Butler. The state offered no testimony to the effect that the defendant actually branded the calf.

Thus the foregoing evidence presents but one question which the defendant relies upon, Is the evidence sufficient to sustain the verdict? This question in turn may be divided into two parts, first, Is the evidence sufficient as to ownership, and, second, Is the evidence sufficent to show the defendant branded the cow in question? The jury resolved both of these issues in favor of the state, and against the defendant. We are bound

by their verdict. Where the record presents conflicting evidence as it does here, in Chapman v. State, 84 Okla. Cr. 41, 178 P. 2d 638, 639, we said:

"Where the evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh the same and determine the facts. Where the evidence is substantial, though conflicting, the Criminal Court of Appeals will not reverse the same on the ground of insufficiency."

In Sadler v. State, 84 Okla. Cr. 97, 179 P. 2d 479, we said:

"Where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, Criminal Court of Appeals will not interfere with verdict even if there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts."

See, also, Ray v. State, 86 Okla. Cr. 68, 189 P. 2d 620, and Pooler v. State, 70 Okla. Cr. 199, 104 P. 2d 733, 105 P. 2d 553, and numerous other authorities to the same effect which we do not deem it necessary to cite or quote from.

It is pertinent to note that the defendant contends that the evidence does not show the defendant Monzell Butler branded the cow in question. It does show, however, that the cow was branded with his branding iron, with his knowledge and consent, by his brother, and that he claimed the cow as his own. Under the conditions herein involved, it is not necessary that the defendant should have actually branded the cow in question. Title 21 O. S. A. 1941 § 172, provides as follows:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they

directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

In the case of Sturgis v. State, 2 Okla. Cr. 362, at page 384, 102 P. 57, 65, this court said in relation to the foregoing statute:

"This statute abolishes all of the distinctions of the common law in criminal cases as to accessories before the fact, and as to principals in the first degree and second degree. All such persons stand before the law upon an equal footing, and must be indicted or prosecuted by information, tried, and convicted as principals."

To the same effect is the case of Drury v. Territory, 9 Okla. 398, 60 P. 101. In Rambo v. State, 38 Okla. Cr. 192, at page 194, 259 P. 602, 603, this court said in construing the foregoing section of the statute:

"All persons concerned in the commission of an offense, whether they directly commit the act, or aid and abet in its commission, though not present, are principals."

To the same effect is the case of Bundy v. State, 16 Okla. Cr. 481, 184 P. 795. See also: Bruning v. State, 63 Okla. Cr. 1, 72 P. 2d 393; Helms v. State, 14 Okla. Cr. 384, 171 P. 340; Etter v. State, 11 Okla. Cr. 208, 144 P. 560; Metcalf v. State, 10 Okla. Cr. 77, 133 P. 1130, 1131; Morris v. State, 4 Okla. Cr. 233, 111 P. 1096; Buchanan v. State, 4 Okla. Cr. 645, 112 P. 32, 36 L. R. A., N. S., 83; Cox v. State, 3 Okla. Cr. 129, 104 P. 1074, 105 P. 369; Drake v. State, 2 Okla. Cr. 643, 103 P. 878.

The question of whether or not the defendant was a principal was one to be resolved in the light of the facts. This issue the jury resolved against him. It was within their province so to do. As we have hereinbefore said, where the evidence is conflicting but substantial, this

court will not interfere with the jury's verdict on appeal. For all of the foregoing reasons, the conviction herein had is affirmed.

BAREFOOT, P. J., and JONES, J., concur.