# SIMONTON v. STATE.

No. A-11397. July 25, 1951.

Rehearing Denied Sept. 19, 1951.

(235 P. 2d 542.)

John A. Cochran, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J. Frank Stanford Simonton, as defendant, was prosecuted by information filed in the municipal criminal court of the city of Tulsa, charging him with the crime of driving an automobile while under the influence of intoxicating liquor. He was tried before a jury, found guilty and his punishment fixed at a fine of $50, and confinement in the city jail for a term of 60 days. Appeal has been duly perfected to this court.

There is but one question involved, and being whether the verdict and judgment of conviction are sustained by sufficient evidence.

The charge against defendant grew out of a collision between a sedan motor vehicle being driven by defendant within the city of Tulsa, and a coupe motor vehicle driven by one Edgar Downing. Downing was proceeding east along the 3700 block of Admiral Place, a street with four moving traffic lanes and two parking lanes. The accident occurred on December 22, 1949, around 12:30 or 1:00 o'clock in the morning, and the weather was very cold and the streets wet.

Concerning the facts of the collision, Mr. Downing testified that the defendant, going west, came around a taxicab, driving over on the south side of the center line of the street, and the cars collided head-on. He testified that there was a man and woman in defendant's car, and the woman got out and left. That the defendant had his car door locked and refused to open it or run the glass down. A pedestrian called the police. This witness testified that

the defendant "talked like a fellow with a lot of drinks", with a thick tongue, and that in his opinion defendant was drunk.

R. E. Graham, a taxi driver, first observed defendant about a mile and a half east of where the accident occurred, and followed him for at least a mile on Admiral Place. Witness attempted to go around defendant at least four or five times, but defendant would immediately pull over in front of witness and prevent him from passing. That they were travelling about 15 miles per hour, and defendant was weaving from one lane to another. He further testified there was a truck on the lane ahead of defendant, and that when they reached a point about one block from where the accident occurred, the witness passed the defendant's car and the truck, and was in the center lane on the north side of the center line when the defendant came around the truck and the taxi driven by witness, driving over into the south lane in doing so, and where he hit Mr. Downing's car approximately six or eight feet south of the center line. The impact turned defendant's car completely around. Witness testified that he was driving around 30 miles per hour when defendant passed him.

Joe McGuire, police officer, testified that he was called to the scene of this accident; that when he arrived the defendant's car and that of Mr. Downing were both headed east on Admiral Place; that he asked the defendant to get out of his car, which he did, and in the opinion of witness defendant was intoxicated. That Officer McCully arrived in about ten minutes to make the report. Witness subsequently took Mr. Downing to his home, and the defendant to the police station. He testified that in his opinion Mr. Downing was not intoxicated.

Officer McCully corroborated Officer McGuire as to the position of the cars, and testified that he took measurements at the scene; that the point of impact was eight feet south of the center line; that defendant admitted to him that he had drunk several beers, how many he did not know, and that defendant's eyes were watery and blood-shot; that his speech was thick and he could not give a clear story about the accident; that he did not have on a shirt and his clothing was disheveled. He was asked:

"Did you discuss with him about taking a urinalysis test? A. I did. Q. What did he say to that, if anything? A. I warned him he didn't have to take it, but he decided he had better not because he was too drunk. Q. In your opinion, Officer McCully, was the defendant intoxicated at the time of this accident? A. Yes. Q. No doubt about it whatever in your mind? A. None whatever. Q. I have asked you general questions. Is there anything else relative to his condition of intoxication, or any other evidence of intoxication, in other words? A. Well, the strong odor of intoxicating liquor and the fact that he swayed very badly when I asked him to perform the manual tests, or what we call optional tests."

At the close of the evidence for the state counsel for defendant did not demur to the evidence, but offered the evidence of a number of witnesses in behalf of defendant.

Pete Jones testified that he had known defendant for about two years; that on the night of the accident in which defendant was involved he saw defendant and his wife at a recreation place about a half block east of Sheridan Road on Admiral Place, known as Joe's Bar; that defendant was on a shuffleboard team; the defendant and his wife and Mr. and Mrs. Murphy and Willie Shook left Joe's Bar together about 12:10 a.m. Witness stated that the defendant, in his opinion, was sober when he left the bar.

Elmer Hatfield, who played shuffleboard with defendant the night in question, testified that he saw no one drink whisky, that he last saw defendant

about 12 o'clock midnight, and that in his opinion defendant was not under the influence of intoxicating liquor.

Don Hudson who was with defendant until midnight or morning of December 22nd, testified substantially as witness Hatfield, as did Noel Cook and Don Cook.

Belle Simonton testified that she was the wife of defendant, that she and her husband went to Joe's Bar the evening in question where her husband was playing on a shuffleboard team. She stated that she did not drink, and that her husband was not under the influence of intoxicating liquor that night; that during the course of the evening he had drunk about three beers; that they left Joe's Bar around midnight and proceeded to drive some friends home and were on their way to Admiral and Howard to eat when the car accident took place; that the defendant did not drink any more after leaving Joe's place. Concerning the facts of the collision, she testified:

"Q. Well, do you remember the accident at all? A. The best I can remember as he was going around the car in front and the car signalled a right turn a car was going to pull on the road ahead of us and he started around this car, kind of pulled this way; that is as far as I know, he put on his brakes; that's all I know. He didn't get around the car the way I remember it. Q. Pardon? A. He didn't get around the car, the way I remember it; he pulled up there to go around that car, that other car swung out, he swung out up ahead, I guess Mr. Downing's car was right there. Q. You don't know what side of this middle line it was on at all, do you? A. No, I don't; it scared me, I don't know."

She further testified that she had the window on her side of the car rolled down and that the prosecuting witness was threatening to shoot them if they left, and that it was cold and that her husband told her to get a taxi and go home, which she did, and he awaited the officers.

The defendant testified that he was 51 years of age; that on the evening in question he and his wife went to Joe's Bar where he played shuffleboard every other Wednesday; that he played in nine games; that he left about ten minutes to 12 o'clock, drove some friends home; that he drank three bottles of beer during the course of the evening at Joe's, but drank nothing after leaving there. He swore that he did not drink whisky. Said he: "I don't drink it [whisky]. I went hungry when I was a kid on account of it, I don't drink it, I detest it." He claimed that he did not drink beer very often. Concerning the facts of the accident, he testified:

"A. I was going west, started around this car. I didn't know whether it was a cab or passenger car, but some kind of a car; I wasn't paying much attention. Just as I started around he give a right-hand signal; I thought he was going to turn north. I started around; he pulled out in the center of the street; we was both in the middle lane, he pulled over. I automatically had to pull over; here came this car right across the street like that, put me in a pocket. I set the brakes down and stopped. Q. That is the time the collision took place, immediately after you set your brakes? A. Just set the brakes down and stopped."

Defendant testified that in 1940 while building an oil rig at Cushing he received an injury to a knee, the insurance company rating him 15 per cent disabled. That for such reason he could not walk straight, and that his knee gave way at times. He stated, however, that he could do the tests the officer asked him to do, but did not have a urinalysis made, but did not make the statement attributed by the officer. Witness denied being under the influence of intoxicating liquor. He stated that he had no knowledge of his eyes being watery and blood-shot as stated by the officers. He did state that he wore

glasses, and that the weather was extremely cold, and he had been out in the wind and that might account for the impression. He denied thickness of speech. He stated that the prosecuting witness came over after the accident and stated: "Don't get out or I will shoot you." He denied that he was asked to open the door of his car.

This completed the evidence for both the state and the defendant. Counsel for defendant did not demur to the evidence, or move for a directed verdict.

We have examined the instructions given the jury. We find that the issues were fairly submitted. No exceptions to the instructions were interposed. There was one answer of a witness that might have been an impropriety, being the answer of Officer McCully where in explaining why the defendant did not take the urinalysis test and said: "I warned him he didn't have to take it, but he decided he had better not because he was too drunk." If that was just a surmise by the officer, it was improper, but if he was merely repeating what the defendant told him, it was of course proper. Counsel for defendant did not seek to clarify this. The defendant denied making such a statement. Here, without doubt, the defendant was driving on the wrong side of the center line of the street at the time of the accident. There was an accident that severely damaged both cars. It might have easily proven fatal to the occupants. Such disregard of the rules of the road and why, would be pondered over by the jury.

Admittedly, the defendant had been drinking beer. It could be that such fact did not cause him to drive as he did. Whether or not defendant was intoxicated was a question for the jury to determine. There was evidence and circumstances for their consideration from which they might reasonably conclude that the defendant was guilty as charged.

A person who undertakes to operate a motor vehicle on the streets and highways of this state, with the admitted smell of alcohol upon the breath, has thereby injected a factual issue involving the question of intoxication, and the accused has assumed a fearful burden, when the factual matters make the issue highly debatable, but the determination of the question is for the jury and its finding is binding upon the accused. The appearance and actions of the accused, as well as the quantity of liquor drunk, enter into the determination of the question of intoxication. The appalling death rate on the streets and highways of this state and the Nation, by reason of the drunken driver, compels the recognition that the question of intoxication is relative, a matter of degree, fluctuating, depending on many circumstances. Operators of motor vehicles should never place themselves in such dangerous position, and in turn by so refraining will not by reason of intoxication endanger their own lives and the lives of others. The alcoholic breath plus demeanor indicative of drunkenness may result in conviction. See Grooms v. State, 77 Okla. Cr. 448, 451, 142 P. 2d 862; Drew v. State, 71 Okla. Cr. 415, 112 P. 2d 429; Luellen v. State, 64 Okla. Cr. 382, 81 P. 2d 323.

The evidence was conflicting it is true, but this court has many times held that it will not reverse a case for insufficiency of the evidence, if there is any substantive evidence on which the jury could reasonably base its verdict of guilty. Butler v. State, 87 Okla. Cr. 369, 198 P. 2d 221; Bisanar v. State, 93 Okla. Cr. 7, 223 P. 2d 795; Walker v. State, 89 Okla. Cr. 284, 207 P. 2d 341.

The judgment is affirmed.

BRETT, P. J., and JONES, J., concur.