Kathryn EWING, Plaintiff in Error,

v.

Doss M. KUTCH and The Travelers Indem-
nity Company, a Corporation,
Defendants in Error.

No. 37725.

Supreme Court of Oklahoma.

Sept. 30, 1958.

Percy Hughes, Hobart, for plaintiff in error.

Clayton Carder (of Carder & Carder), Hobart, for defendants in error.

WELCH, Chief Justice.

Kathryn Ewing brought suit in the District Court of Kiowa County on March 22, 1956, against Doss M. Kutch, Night Chief of Police of Hobart, Oklahoma, and The Travelers Indemnity Company, a corporation, for unlawful arrest. This suit was defended on the grounds that the defendant officer was justified in making the arrest under the provisions of paragraph 4 of Section 196, Title 22, O.S.A., which provides:

"A peace officer may, without a warrant, arrest a person: * * * on a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

And said action resulted in a verdict and judgment for defendants. An appeal was taken to this court by plaintiff.

The plaintiff contends that the trial court erred in not sustaining her motion for a directed verdict.

The evidence most favorable to the defendants from the record is the testimony of the defendant, Doss M. Kutch, however, the pertinent part of it was not supported by any of the other witnesses. He testified that he was in Mr. Toma's grocery store about 7 o'clock P.M., on the evening of the arrest, to buy some groceries. That after he had paid for his groceries and started out of the store, he was stopped by Mr. Toma who inquired of him whether he knew the plaintiff, and upon his reply that he did not, he was informed that she had a check in there, had bought some groceries and that she would not identify herself, and Mr. Toma requested he investigate her.

Kutch's testimony further reveals that he inquired of the Clerk, Jim Lake, what size check plaintiff gave, and was informed the check was in the amount of $30. Mr. Toma then showed plaintiff to Kutch as she was going down the street. That he followed her to a drug store, where Mr. Brown was cashing a check for plaintiff. That he informed her he had been called to investigate her on a check down at Toma Brothers; she denied having been in Toma Brothers' store. That when she refused to go to Toma Brothers with him, he told her he would have to arrest her for investigation of a felony; she then went along without further trouble. That upon returning to Toma's store with plaintiff, he then learned for the first time that she had not given a check to Toma, but had only asked to cash one.

It is shown by undisputed evidence that Mrs. Ewing had tendered her check to Toma's store, but that it was not accepted for lack of identification; that she then went to the drug store; that the druggist either knew her or had formerly dealt with her and had filled a prescription for her which she picked up that day; that the druggist accepted her check and had counted out the change after taking out the price of the prescription, and had placed the change on the counter; that Mr. Kutch took the check from the druggist and handed back to him the change from the counter; that he then took Mrs. Ewing into custody in the drug store and required her to accompany him the distance of several blocks to Toma's store; that he there ascertained the fact to be that she had not cashed any check at Toma's store; that he nevertheless required Mrs. Ewing to remain in his custody and to accompany him to the sheriff's office or to the office room of the jail, where he required her to remain in his custody until he could telephone to the bank; that when he talked to the banker he received information that Mrs. Ewing's check was good.

■ It therefore seems clear that the officer had little or no justification for taking Mrs. Ewing into custody in the first place, or in requiring her to accompany him the distance of several blocks to Toma's store, and that in any event when the officer was fully advised at Toma's store that Mrs. Ewing had not cashed any check

there, then there was no justification whatever for his detaining Mrs. Ewing in his custody and requiring her to go with him to the sheriff's office or the office of the jail and to remain there in his custody while he telephoned to the bank. Mrs. Ewing had not violated any law, much less committed any felony. No one had really suggested to the officer that she had committed any felony, and actually he had no facts whatever on which to fairly base a conclusion of probable cause to believe that she had committed any crime, much less a felony.

In the case of Hopkins v. Stites, 70 Okl. 177, 173 P. 449, we held:

"In an action for malicious prosecution what amounts to probable cause is a question of law for the court, and to leave the question of what amounts to probable cause to the jury is prejudicial error."

In the case of Anderson v. Sager, 8 Cir. 173 F.2d 794, the Federal Circuit Court of Appeals upheld the trial court in sustaining a motion for a directed verdict, when the officers, as defendants, failed by their evidence to show probable cause for arrest.

▆ Where, under the pleadings, the plaintiff is entitled to recover unless certain affirmative defense pleaded by the defendants is sustained, and where no evidence is produced reasonably tending to support such defense a verdict should be directed in favor of plaintiff. Conwill v. Eldridge, 71 Okl. 223, 177 P. 79.

In the case of Aetna Life Ins. Co. v. Mosburg, 188 Okl. 371, 109 P.2d 493, we held:

"Where, under the evidence, a plaintiff is entitled to a directed verdict save for the amount of his recovery it is error to refuse a requested instruction to this effect."

▆ We have been unable to find any evidence in the record where any one made a charge or accusation that plaintiff had committed a felony. From all of the evidence most favorable to defendant, there does not appear any reasonable cause to even suspect the plaintiff had committed or was about to commit a felony, or that a felony had been committed. It cannot be considered reasonable cause to believe one has committed a felony because they cash a check or attempt to cash a check in a place of business where they are not known. The record clearly reveals that this plaintiff was doing nothing more than the ordinary individual might do in the course of transacting business any day.

Admitting all of the evidence which was given favorable to defendants, together with all inferences and conclusions as might be reasonably drawn from it, there is not sufficient evidence to authorize the verdict.

The sole question which should have gone to the jury, under the evidence here presented, was the amount of recovery, and therefore it was error to deny plaintiff's motion for directed verdict.

Therefore judgment of trial court is reversed, and remanded for a new trial in accordance with views herein expressed.

CORN, V. C. J., and HALLEY, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.

DAVISON and JACKSON, JJ., dissent.

JACKSON, Justice (dissenting).

In the case before us the defendant, a 70 year old Chief of Police who had served the City of Hobart as an officer for twenty-five years, was asked by Mr. Toma, a reputable groceryman, to investigate the plaintiff herein. The officer was told that a woman had a check in there, had bought groceries, and would not identify herself any way. The defendant officer asked the size of the check and a clerk informed him that it was $30. The defendant testified that Mr. Toma was excited and said, "come on, I'll show her to you." Mr. Toma went to the door and pointed to the lady who at that time was some distance away. There is testimony in the case that would indicate that the

woman, plaintiff herein, was walking rapidly away from the store. There is also testimony that it was about "dusky" dark and near closing time for the store. Mr. Toma testified that this is the time of day when "hot check artists" are most likely to appear.

I am of the opinion that the defendant officer was justified in making some investigation to determine whether a crime had been committed. In Hargus v. State, 58 Okl.Cr. 301, 54 P.2d 211, it was held:

"To preserve peace and prevent crime, peace officer, or private citizen may make reasonable inquiry of person coming under his observation or brought to his knowledge under circumstances reasonably suggesting that crime has been or is about to be committed."

In Robedeaux v. State, 94 Okl.Cr. 171, 232 P.2d 642, it was held:

"Where officers observe unusual appearance of driver of motor vehicle, and though no traffic law is being violated, observe that vehicle is being operated in unorthodox manner, and conclude that defendant is intoxicated, they are justified, in making, and must make, further investigation."

The officer followed the plaintiff into a drug store where a check was being cashed for her. He told the druggist that he was called to investigate this woman on a check at Toma Brothers. Plaintiff spoke up and said she had not been in Toma's store at all. The defendant then asked the plaintiff to go to Toma's to clear the matter up and she said she wouldn't go. He asked her a second time and she said "I'm not going with you; I don't have to." She wanted to use the phone and the officer told her it was not necessary and that possibly there would be no more to it if she would identify herself. She refused to identify herself. The officer then told her that he would have to arrest her for investigation of a felony. She became very abusive. The officer further testified:

"We came out of Smith's drug store and I had the check in my hand. I asked her if that was her name on the check and she told me it was none of my business. I asked her where she lived. Down at the corner of the check it has Mountain View, Route 3; and I asked her where she lived and she said, 'That's none of your business.' She says, 'You're the silliest thing I have ever found.' I asked her about the bank at Roosevelt, and she said, 'You don't need to ask such silly things.' She said it was a shame and disgrace to have such a thing on the police force—she didn't say 'thing', she said officer. * * * everything I asked her she told me it was none of my business."

When plaintiff and defendant returned to the grocery store the officer learned for the first time that the check presented to Toma had not been cashed. However, I do not consider this of any particular importance. Under the statute if plaintiff obtained or *attempted* to obtain $30 in property and money by the use of a false and bogus check she would be guilty of a felony. 21 O.S.1957 Supp. § 1541.

From Toma's store the defendant took plaintiff to the sheriff's office. There the plaintiff was allowed to make a phone call and the defendant called the banker at Roosevelt. The banker told the defendant that the check for $30 was good. Plaintiff was then given the check and released.

The defendant testified that from the time he first spoke to plaintiff in the drug store to the time he released her no more than twenty minutes could have elapsed. Asked why he placed Mrs. Ewing under arrest he testified: "Because she wouldn't go with me down to Mr. Toma's, I placed her under arrest for a felony. * * * suspicion of a felony. The man had made a complaint; it was over $30.00, which would constitute a felony."

On cross-examination the defendant testified that he did not intend to arrest the

plaintiff until she refused twice to go with him to Toma's to clear it up. He further testified: "all I could do was arrest her. I couldn't walk off and leave her standing there."

The foregoing facts are largely extracted from defendant's testimony and is the testimony which I consider most favorable to the defendant. Plaintiff's testimony sharply contradicts that of defendant in many respects.

Toma, in suggesting an investigation, did not inform the defendant that plaintiff had committed a felony. However, the information given and the fact that plaintiff was moving away from the grocery store rapidly would justify an investigation. When defendant attempted to talk to the plaintiff she refused to give him any information. She did not identify herself, nor did those in the drug store volunteer any information. Those engaged in the enforcement of the law soon learn that innocent people usually talk freely and are cooperative while those who are guilty rarely ever talk freely. There was no reason why plaintiff should have denied being at Toma's store and attempting to cash a check there. Yet she did, and this in my opinion would cause any prudent person to believe that she had cashed, or attempted to cash, a false and bogus check at that store.

When a crime has been committed, or suspected, and an officer is in hot pursuit, he rarely ever has an opportunity to act upon mature judgment. He must act quickly and unless he does the guilty may escape. To properly evaluate the conduct of an officer one must put himself in the place of the officer with all the surrounding circumstances, conditions and stresses that were upon the officer at the time the officer had to make his decision. When this is done I believe it will become readily apparent that the defendant had reasonable cause to believe that plaintiff had committed a felony. To hold an officer to the highest degree of caution and prudence when he is acting under pressure is

not beneficial to the welfare of our society. In the fifth paragraph of the syllabus in Dunnington v. Loeser, 48 Okl. 636, third paragraph of the syllabus in 150 P. 874, this court held:

"To adopt a lax rule, favorable to actions for malicious prosecution, is to open the door in such actions, and to close the door to presecutions, to turn society over to the lawless, and to create a dread on the part of any one who dares to prosecute."

In the body of the opinion it was said:

" 'Actions for malicious prosecution have never been favored in law,' and we hardly think we have reached that guileless age in which we can afford to take down the bars."

The principle of law and public policy announced in the Dunnington case has been approved in Price v. Cook, 120 Okl. 105, 250 P. 519, and in Bryan v. Lee, 123 Okl. 22, 252 P. 2. There is a greater reason for the application of the rule to a peace officer who is under a legal duty to enforce the law than there is to a private citizen who is under no such legal duty.

In Grau v. Ford, 183 Ky. 521, 209 S.W. 369, 372, 3 A.L.R. 642, in an action for wrongful arrest, the court said:

"If in cases like this an officer, who must necessarily act with more or less haste in order to prevent a possible felon from making his escape, would have to satisfy himself beyond question that a felony had been committed, or must act at his peril, the great public necessity for a prompt and rigid enforcement of the law would be largely curtailed.

"In announcing this principle, we would not be understood as endorsing any rule that would license the officer under such circumstances to act upon unsubstantial appearances or unreasonable stories; but when the facts are such that a reasonably prudent man would have believed plaintiff guilty, and would have acted on it, we

think that the officer is authorized to make the arrest, although as a matter of fact it might subsequently turn out that no offense had been committed, or if one, the person arrested had no connection with it.

"We have no doubt that public policy is better served under such a rule, than it would be to require the officer to act at his peril."

I am of the opinion that the trial court correctly overruled plaintiff's motion for a directed verdict.

I respectfully dissent.

I am authorized to say that Justice DAVISON concurs in the foregoing views.