CHARLIE MURRAY v. STATE.

No. A-3691.    Opinion Filed Aug. 3, 1921.
(198 Pac. 973.)

(Syllabus.)

1.    Trial—Delay in Prosecution—Waiver of Right to Discharge.
Where the record shows that the accused was not anxious for a speedy trial, and where the accused, without insisting upon his right to have the cause dismissed for want of prosecution, under the provisions of section 6095, R. L. 1910, on his own motion subsequently has the cause continued from time to time, when the cause is finally set for trial it is not error for the trial court to refuse to permit him to withdraw his plea of not guilty in order to interpose a motion to dismiss the prosecution for the reason that the state had previously delayed trial.

2.    Same. The constitutional and statutory right to a speedy trial in a criminal case is one that may be waived by the defendant, and under the circumstances in this case it was waived.

3.    Appeal and Error—Discretion of Trial Court—Continuance. An application for a continuance is addressed to the sound discretion of the trial court, and in the absence of any abuse of such discretion the same will not be reversed upon appeal. Applying this rule to the facts in this case, there was no error in overruling the defendant's motion for a continuance.

4.    Witnesses—Competency—Effect of Misspelling Name in Witness List. It was not error for the court to refuse to exclude the testimony of Bluford Wills, whose name appeared "Buford Wills" among the list of witnesses for the state served on the defendant before the trial, where it appears that the defendant was not prejudiced nor misled by the misspelling of the name.

5.    Homicide—Manslaughter in First Degree—Sufficiency of Evidence. The evidence examined, and found amply sufficient to support the verdict.

Appeal from District Court, McIntosh County; Harve L. Melton, Judge.

Charlie Murray was convicted of the crime of manslaughter in the first degree, and sentenced to twelve years' imprisonment in the state penitentiary, and he appeals.    Affirmed.

Green & Green, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J.    Charlie Murray was, by information filed in the district court  of  McIntosh county,  January 19, 1918, charged with the murder of Jess Rogers on the 19th day of April, 1917, upon which charge he was tried and convicted of manslaughter in the first degree September 25, 1919, and his punishment fixed at imprisonment for twelve years in the state penitentiary.    From this conviction, judgment, and sentence he appeals.

The circumstances leading up to this homicide occurred at the home of the defendant, Charlie Murray, in the country near Salem, in McIntosh county.    Late in the afternoon of the day of the tragedy the defendant had returned from Henryetta.    The weather was rainy and disagreeable, and the defendant, upon reaching home, had disrobed and gone to bed and to sleep.    There was a dance at the defendant's house that night, and after the people had begun to gather and after the dancing had begun the defendant awoke and called to his wife to bring him a pair of dry socks.    The wife thereupon went to a table and removing the defendant's revolver from the table, hid it beneath some papers and then procured the socks, as requested.

Bert Nelson, a brother of the defendant's wife, had been living with the defendant and his sister prior to this time, in their employment, and had been discharged or released from employment a short time previous.    Soon after the defendant

arose on this night, he and Nelson engaged in an altercation or fist fight, after which Nelson ran out of the house. Immediately following, the defendant and his wife had a scuffle, in which both fell to the floor. After this some of the witnesses noticed that the defendant's face had been scratched and was bleeding, and that the defendant's wife had a knot or bruised place on her forehead. The defendant then took down a loaded shotgun from the place where it was kept and held it in his hands, until presently Jess Rogers came in at the door and demanded of the defendant that he put up the gun. The defendant refused, whereupon the parties cursed and swore at each other. While this was going on Jess Rogers started approaching the defendant, and the defendant ordered him to stop. The testimony here is conflicting; a half dozen or more witnesses for the state testified that Jess Rogers did stop or hesitate before the shooting began. The defendant fired one of the barrels of his shotgun into the floor near Jess Rogers' feet, and Jess Rogers turned to retreat or get out and a second shot was fired, the load entering his left hip and side, and he fell over upon a couch nearby. The defendant then extracted the shells and placed two other loaded shells in the gun. From the effect of the shotgun wound in the hip and side the deceased died a week later.

The defendant claimed that the deceased was advancing upon him in a threatening manner and had one hand back of him or in his hip pocket. It subsequently developed that the deceased was unarmed, and it also developed from the testimony of both the state and the defendant that there had been no previous difficulty between the two men.

There is evidence tending to show that the brother-in-law, Bert Nelson, brought some Choctaw beer to the premises that evening. At any rate there was Choctaw beer there, but whether any of the parties to the quarrels were intoxicated or under the influence of liquor does not clearly appear. There is

testimony to the effect that after the shooting the deceased moaned and groaned on account of his physical suffering, and that he addressed the defendant and said, "Charlie, you killed me in cold blood", and that the defendant said to him, "Shut up, or I'll finish the job." The testimony shows that after the shooting and before the arrival of the physician and others, who took charge of the wounded man, a curtain was hung up at the connecting door or opening into the other room, and the keg of Choctaw beer was removed from the room to a field or lot near the barn.

At the time of this trial the defendant and his wife were living separate and apart, and the wife did not testify. At the first trial the jury failed to agree, and at the second trial the defendant was convicted, as before stated.

The following assignments of error are urged in the brief:

First: The court erred in overruling the defendant's motion for permission to withdraw his plea of not guilty for the purpose of filing a motion to dismiss the cause for want of prosecution, and in refusing to dismiss the case for want of prosecution.

Second. The court erred in overruling the defendant's motion for a continuance.

Third. The court erred in permitting the witness Bluford Wills to testify as a witness against the defendant, for the reason that the name "Bluford Wills" did not appear on the list of witnesses served on the defendant.

Fourth. The court erred in overruling the defendant's demurrer to the evidence and his motion for a directed verdict of not guilty.

1. The record discloses that a preliminary hearing was had before a justice of the peace on the 3d day of May, 1917,

and that the information was not filed until the 9th day of January, 1918, and that the August, 1917, term of court convened and adjourned between those two dates. Section 6095, R. L. 1910, provides:

"When a prisoner has been held for a public offense, if an indictment or information is not filed against him at the next term of court at which he is held to answer, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown."

The record shows that on February 4, 1918, the defendant filed his demurrer to the information and when the same was overruled, entered his plea of not guilty. The case was set for trial on February 8, 1918, and on that day, on application of counsel for defendant, the trial was continued until February 11, 1918. On that day the case came on for trial before the court and jury, and a mistrial resulted on account of the failure of the jury to agree. The case was then passed from time to time until February 5, 1919, when it was again set for trial and again continued, upon application of the defendant, over the term. On September 19, 1919, the defendant filed his motion to dismiss the action for want of prosecution, which was but a few days before the case was set for trial.

It appears from the record that the defendant and his counsel were not anxious for a speedy trial, and that he and his counsel had an understanding with the prosecuting attorney that the case should not be tried at the August, 1917, term of court; and that the reason that the same was not filed before this term of court was because the county attorney had inadvertently or for some reason misplaced the information. Under this state of the record, it would seem that the court did not abuse his discretion in refusing the defendant to withdraw his plea and in refusing to dismiss the case for want of prosecution. The constitutional and statutory right to a speedy trial is one that may be waived, and the court holds

that under the circumstances in this case the defendant did waive his right to have the cause dismissed for want of prosecution. Ex parte Hudson, 3 Okla. Cr. 403, 106 Pac. 540; Dalton v. State, 6 Okla. Cr. 89, 116 Pac. 954; Stouse v. State, 6 Okla, Cr. 424, 119 Pac. 271; State v. Frisbie, 8 Okla. Cr. 406, 127 Pac. 1091; Head v. State, 9 Okla. Cr. 356, 131 Pac. 937.

2. The grounds upon which the defendant bases his right to a continuance on account of the absence of his wife are that she was sick and about to be confined, and consequently unable to attend the trial at that time. The defendant and his wife were living apart and had been for some time, and the last time the defendant had even seen his wife was in April, 1919, and the application for a continuance was made on September 23, 1919. A subpoena was issued for Mrs. Murray, then residing at Antlers in Pushmataha county, Okla., on the 4th day of September, 1919, and the same was served on the 16th day of September. Under this state of facts it was evident that the defendant had known for a long time that his wife would not be physically able to attend the trial, and if the defendant desired her testimony it became his duty to have his wife's deposition taken. No proper diligence to procure the testimony of this witness was shown. She may, in fact, have been physically able to appear and testify at the trial. After service and nonattendance of this witness, no application for an attachment for this witness was made. Under all these circumstances it was not error for the court to overrule the application for a continuance on the grounds of the absence of Mrs. Murray.

Another reason alleged as grounds for a continuance in the motion for a continuance was the absence of Dave Guinn, who resided at Texanna, in McIntosh county. The record shows that the witness Dave Guinn did not testify at the first trial and that a subpoena was not issued for him until the 4th day of September, 1919, and that the same was served on the

16th day of September, seven days before the trial. It is alleged that if he had been present he would have testified that he heard Jess Rogers tell Bert Nelson that he would "stay with him". That this statement was made in the yard of the home of the defendant immediately before Bert Nelson entered the house and entered into the difficulty which led up to the shooting immediately after Nelson had been ejected. This testimony does not appear to be competent or material. The defendant applied for no attachment to procure the attendance of Dave Guinn.

Evidence was heard upon the merits of the application for a continuance, and the trial court must have come to the conclusion that the application was without merit. Under the repeated rulings of this court, an application for a continuance is addressed to the sound discretion of the trial court, and in the absence of any abuse of such discretion the same will not be reversed upon appeal. There being no showing of an abuse of discretion in the case of either witness, the ruling of the trial court will not be disturbed. Lee v. State, 7 Okla. Cr. 141, 122 Pac. 1111; Musgraves v. State, 3 Okla. Cr. 421, 106 Pac. 544.

3. It is next contended that the court erred in permitting Bluford Wills to testify in this case for the reason that his name was not included among the names of witnesses served upon the defendant, as required by statute. The record shows that within the proper time before the first trial a list of witnesses was served upon the defendant, which included the name "Buford Wills" and that Bluford Wills did in fact testify at that trial; at the second trial the same witnesses were sworn and testified. The witness testified that his true name was **Bluford** Wills; that prior to that time there was a person in being named Buford Wills, who had died in 1913. It was plain that the spelling of the name, as it appeared in the list of witnesses, was merely a typographical error, and under

the circumstances the defendant and his counsel must have known or had notice of the identity of the person. Furthermore, the defendant went to trial without first making objection to the testimony of Bluford Wills on the ground that his name was not among the witnesses served on the defendant, and the failure of the defendant to interpose an objection at the first trial constituted a waiver of whatever right, if any, he had on account of the misspelling of the name. The court committed no error in permitting this witness to testify.

The last assignment of error is that the court erred in overruling the motion of the defendant to direct a verdict, upon the grounds that the evidence did not show that the death of the deceased was the result of the shots fired by the plaintiff in error. The testimony is that the deceased, after he was shot and wounded, gradually grew worse from day to day, and died on the seventh day after receiving the wound. There is nothing in the record to show or that would tend to show that his death could have been due to any other cause. On the contrary, the evidence shows that his death was the result of the wounds inflicted by the defendant. It was for the jury to say, under all the evidence, whether or not they were convinced beyond a reasonable doubt that the deceased came to his death by reason of the wounds inflicted by the defendant.

For the reasons stated in this opinion, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.